2013 UT App 104

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

TANGA BECKSTROM,
*Defendant and Appellant.*

Opinion
No. 20110227-CA
Filed April 25, 2013

Fourth District, Provo Department
The Honorable James R. Taylor
No. 101400296

Aaron P. Dodd and Dustin Parmley, Attorneys for Appellant
John E. Swallow and Kris C. Leonard, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
CAROLYN B. MCHUGH and J. FREDERIC VOROS JR. concurred.

ORME, Judge:

¶1 Defendant Tanga Beckstrom appeals her conviction on one count of driving under the influence (DUI) resulting in serious bodily injury to another, a third degree felony, *see* Utah Code Ann. § 41-6a-502, -503(2)(a) (LexisNexis 2010), to which she pled guilty. We affirm.

BACKGROUND

¶2 A husband and wife were driving on a snowy night on State Street in Lehi. Defendant collided head-on with their vehicle after she entered the four-lane street going the wrong direction. The

couple was seriously injured in the accident. LifeFlight was dispatched, but the snowstorm became so severe that the flight had to be cancelled, and the couple was instead taken to the hospital by ambulance.

¶3     The police officer responding to the scene did not immediately identify any behavior by Defendant that led him to believe she was impaired. But he soon observed that Defendant's "speech was slurred, slow, [and] deliberate"; her eyes were "glossy and glazed over"; the odor of alcohol emanated from her person; and she was stumbling as she walked. Defendant told the officer that the couple had been driving without their lights on, a statement that was inconsistent with the accounts of other witnesses. Suspicious that Defendant was impaired, the officer asked her to perform several field sobriety tests. Defendant readily agreed. The officer was concerned about administering the tests outside because Defendant, who was wearing jeans, light shoes, and a light jacket, was not adequately dressed for the worsening weather and cold. He considered administering the tests inside a nearby convenience store, but he determined that he would have been unable to position his vehicle so that the tests could be recorded with his dashboard video camera. The store was also full of employees and customers.[1]

¶4     Administering the tests under the cover of an awning outside the convenience store, which the officer also considered, presented problems of its own. Testing would have blocked customers from using the gas pumps and, even with the awning, Defendant still would have been subjected to "blowing snow" and frigid temperatures. Importantly, the validity of sobriety tests can, in the words of the officer, "be greatly affected by a person's condition from the cold." The officer determined that "even with

---

[1]There is no indication in the record whether, in any event, store management would have been receptive to police field work being conducted within their premises.

that awning, the [weather] conditions would not have been appropriate for standardized field sobriety tests." Meanwhile, the police station with "heat, level concrete, [and] no snow" was just a couple of blocks away, so the officer asked Defendant if he could take her there to complete the tests. He specifically informed Defendant that she was not under arrest. Defendant agreed to the relocation and rode with the officer in his police car for less than 90 seconds during their two-block journey. She was apparently not handcuffed or otherwise restrained—except, perhaps, by her seatbelt.

¶5     Upon arriving at the police station, the officer did not call for other officers but immediately administered the tests in a lighted, heated, secured parking garage. Defendant failed the sobriety tests, confirming the officer's suspicion that she was impaired. Defendant was then placed under arrest. Defendant admitted to drinking vodka shots earlier that night, and subsequent intoxilyzer testing revealed her blood alcohol content to be .228—almost three times the legal limit. Defendant was charged with DUI and a traffic offense. Defendant pled not guilty.

¶6     Defendant filed a motion to suppress, arguing that the results of the field sobriety testing, intoxilyzer testing, and other evidence should be suppressed because her detention amounted to a de facto arrest without probable cause or because the scope of her detention exceeded the permissible limits of an investigatory detention. The trial court denied the motion, concluding that transporting Defendant to the police station to conduct the sobriety tests did not exceed the permissible scope of an investigative detention under all the circumstances.[2] Defendant then entered a

---

[2]The trial court also resolved the de facto arrest argument. Although the officer assured Defendant that she was not under arrest at that time, the court concluded that probable cause existed to justify Defendant's arrest before she was transported

(continued...)

no-contest plea to the DUI charge, conditioned on her right to appeal her motion to suppress. *See generally State v. Sery*, 758 P.2d 935, 937–941 (Utah Ct. App. 1988). Defendant was sentenced to a term of probation and fined $2,883. She now appeals.

## ISSUE AND STANDARD OF REVIEW

¶7     Defendant argues that prolonging her detention was impermissible. She insists that her rights were violated when she was transported to the nearby police station for field sobriety testing. She requests that this court reverse the denial of her motion to suppress and vacate her conditional plea.

¶8     "In cases involving Fourth Amendment questions under the United States Constitution, we review mixed questions of law and fact under a correctness standard," and "[f]actual findings underlying a motion to suppress are evaluated for clear error." *State v. Worwood*, 2007 UT 47, ¶¶ 11, 12, 164 P.3d 397. No deference is given to the trial court's application of law to underlying factual findings in search and seizure cases. *State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶9     "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been

---

[2](...continued)
to the police station. In view of our affirmance as explained in this opinion, we decline to render an advisory opinion on whether the State established that probable cause existed even before the field sobriety tests were performed.

or is being committed." *State v. Menke*, 787 P.2d 537, 542 (Utah Ct. App. 1990) (alterations in original) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). "Utah courts generally find that probable cause for DUI exists when slurred speech, bloodshot eyes, and the smell of alcohol are accompanied by failed field sobriety tests." *Worwood*, 2007 UT 47, ¶ 35. Of course, when some but not all of these factors are present, an officer may at least have a reasonable, articulable suspicion that a suspect has been driving under the influence, and that suspicion will warrant prolonging a suspect's detention for further investigation so that the officer's suspicion can be dispelled or confirmed. *See Terry v. Ohio*, 392 U.S. 1, 21, 28 (1968).

¶10    Defendant argues that probable cause could not have existed prior to her transportation and testing because *Worwood* establishes that without additional evidence, bloodshot eyes, slurred speech, and the smell of alcohol do not provide sufficient trustworthy information to support probable cause for a DUI arrest. *See* 2007 UT 47, ¶ 35. Even assuming she is correct in her key assumption—and we do not mean to imply that she is—it only serves to underscore the good police work done in this case by the officer who chose not to arrest Defendant on the spot but rather to first administer the field sobriety tests that are the typical lynchpin in establishing the probable cause needed to support a DUI arrest, as *Worwood* recognizes. *See id.*

¶11    We conclude that the brief further detention of Defendant to facilitate field sobriety testing was permissible under all the circumstances, including the harsh weather conditions and Defendant's expressed consent to move to a more protected setting less than two minutes away.[3] "In evaluating the scope of a stop, the court should foremost consider 'whether the police diligently

---

[3]Defendant contends that her consent was involuntary. The trial court, however, found that Defendant's consent was not coerced, and Defendant has not demonstrated that this determination was erroneous.

pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Id.* ¶ 28 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). In doing so, officers do not have to employ the least intrusive means available; they must merely act reasonably in choosing an alternative. *See id.* Reasonableness is determined by evaluating the "totality of the circumstances facing the officer." *Id.* Among the circumstances that can be taken into account are an "officer's concerns about safety and security," *id.* ¶ 29, as well as physical conditions that would prevent accurate sobriety testing, *see id.* ¶ 31.

¶12   The totality of the circumstances supports the trial court's determination that the officer acted reasonably in moving the testing venue from the inclement roadside to a warm and well-lit nearby parking garage, albeit one that was part of the police station. Weather conditions were so terrible just after the accident that the intended deployment of LifeFlight had to be cancelled. Defendant was wearing only light clothing and was unprepared for such severe weather. According to his undisputed testimony, the officer was concerned about Defendant's wellbeing as well as the resulting impact the cold could have on the validity of the sobriety testing. Although the officer briefly considered the possibility of conducting the sobriety tests inside the nearby convenience store, the officer would have been unable to position his dash cam to record the testing,[4] and as the trial court noted, testing inside "would have plainly intruded upon that business." While not mentioned by the trial court, subjecting Defendant to sobriety testing inside a busy convenience store would also have subjected her to possible embarrassment or humiliation. It was therefore reasonable for the officer to find an alternative location to administer the sobriety tests.

¶13   While officers may employ reasonable detention alternatives, the detention must still comport with constitutional

---

[4]The video recording of field sobriety tests, if possible, is in the best interest of the State, DUI suspects, and the public.

requirements. *See State v. Worwood*, 2007 UT 47, ¶¶ 29–30, 164 P.3d 397. Transporting a suspect can increase the intrusiveness of an investigative detention and potentially escalate it to the level of a de facto arrest. *See id.* ¶ 30. For instance, transporting a suspect can be "benign when the movement does not change the level of coercion involved in the stop," but moving a suspect "from a public place to an enclosed, police-dominated location can change the level of justification required from reasonable suspicion to probable cause." *Id.* In *Worwood*, the Utah Supreme Court determined that transporting a suspect from the side of the road to a police officer's private residence located more than a mile away where the suspect was met by additional law enforcement officers exceeded the permissible scope of an investigatory detention because there was "no indication that [the officer] was concerned about his safety." *Id.* ¶ 31. *See id.* ¶ 5. Additionally, the *Worwood* court noted that the record before it was silent regarding physical factors that could have impacted sobriety testing such as the grade and pitch of the dirt road, weather conditions, or time of day. *See id.* ¶ 31. *Worwood* held that if just one of those factors had been present, "a more expansive detention may have been justified under reasonable suspicion." *Id.*

¶14    The case at hand meets the requirements of *Worwood*. Severe weather was the primary impetus for the officer's decision to relocate the testing venue. Concerns about harsh weather, Defendant's inadequate clothing for the conditions, and the infeasibility of using the convenience store as a testing site all reasonably informed the officer's decision to transport Defendant—with her permission and with the assurance that she was not under arrest—for less than 90 seconds to a better testing location. And any concern about intrusiveness and coercion is minimal in this case, given that Defendant consented both to being transported and to having the testing completed at the police station. While the new location could be characterized as an "enclosed, police-dominated location," there is no evidence that the level of coercion or intrusiveness increased once Defendant arrived at the parking garage. Backup was not called for, and Defendant

was not taken inside the police station. The tests were conducted promptly and out of view of other officers or passersby. The new location offered Defendant the benefits of "flatter pavement," warmth, and light, as opposed to the potential adverse impacts on her testing from either severe weather at the roadside or gawking customers at the convenience store. And its close proximity did not lengthen Defendant's detention much beyond what would have been entailed in relocating to the convenience store. *Cf. State v. Simons*, 2013 UT 3, ¶ 33, 296 P.3d 721 (analyzing reasonableness of extension of detention "objectively and in its totality," with a primary focus on whether the extension was "reasonably directed toward the proper ends of the stop"). We conclude that under the totality of the circumstances, the officer "diligently pursued a means of investigation that was likely to confirm or dispel" his suspicion quickly, *Worwood*, 2007 UT 47, ¶ 28 (citation and internal quotation marks omitted), and that Defendant's brief additional detention, with her permission, did not exceed the permissible scope of an investigative detention.

CONCLUSION

¶15    The arresting officer had a reasonable, articulable suspicion that Defendant was guilty of DUI following his initial investigation of her accident. Under all the circumstances, including Defendant's express consent, it was reasonable to prolong her detention for a few more minutes to administer field sobriety tests in order to confirm or dispel that suspicion and to do so in a more appropriate setting than the snowy roadside. The tests confirmed the officer's suspicion, and with probable cause now firmly established, Defendant was arrested. The trial court ruled correctly in denying Defendant's motion to suppress, and her conviction is affirmed.