2014 UT App 289

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SHANNON STEWART,
Defendant and Appellant.

Memorandum Decision
No. 20130672-CA
Filed December 11, 2014

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 081500713

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH
concurred.

ORME, Judge:

¶1 Defendant Shannon Stewart appeals her conviction for possession or use of a controlled substance, a third degree felony, and possession of drug paraphernalia, a class B misdemeanor. We affirm.

¶2 On the night of December 1, 2008, a police officer pulled Defendant over because her taillights were not working.[1] The

---

1. "[W]e review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948
(continued...)

police officer approached Defendant's vehicle and told her the reason for the stop. The police officer noticed that Defendant was "jittery" and that she was "dancing around in the car" as she retrieved her license and registration. Defendant told the police officer that she was upset because Adult Probation and Parole (AP&P) had arrived at her home to check on her boyfriend[2] and had interrupted her daughter's birthday party, but she also told him different stories that "didn't make sense."

¶3     While talking with Defendant, the police officer noticed that she was slurring her words and that her "pupils were constricted" and did not respond to light. The police officer, a certified drug-recognition expert, recognized Defendant's symptoms as consistent with the use of a narcotic like "Percocet or a Lortab or a pain medication." Suspecting that Defendant was driving under the influence, the police officer asked Defendant to step outside her vehicle so that he could question her outside of the presence of the children in the car. Once she was outside the vehicle, Defendant told the police officer that she took three Lortabs a day, Prozac, and other pain medication, but she also claimed that she was not under the influence because she was immune to any side effects of her medication.

¶4     The police officer then went back to his car to run a license and warrants check on Defendant. While he was in his car, the police officer called an AP&P officer, who confirmed that Defendant had been at the home when AP&P agents arrived for a field visit with her boyfriend, who was also a resident in the home. The AP&P officer reported that they had asked Defendant to leave because she was not cooperating with them. The AP&P officer then told the police officer that they had found a box in a bathroom in

---

1. (...continued)
P.2d 337, 339 (Utah 1997).

2. Defendant refers to the probationer as her boyfriend; the State refers to him as her husband.

the home containing syringes and a cotton ball with methamphetamine residue.[3]

¶5    Upon learning of the drug discovery, the police officer returned to Defendant and asked her to pull up her sleeves so that he could look for injection sites. The police officer observed needle marks and bruising on both of Defendant's arms. The police officer then conducted three field sobriety tests, all of which Defendant failed. At this point, the police officer believed that Defendant could not operate a vehicle because she was under the influence of illegal drugs or pain medication, and he arrested her for driving under the influence and placed her in the back seat of his patrol car. While Defendant was waiting in the car, the AP&P officer delivered the box found in the bathroom to the police officer. Defendant's mother also arrived on the scene to pick up the children.

¶6    The police officer then advised Defendant of her *Miranda* rights and asked if she understood her rights. According to the police officer, Defendant said that she would be willing to cooperate even though "she knew it would go against her" and that "there would be some questions she probably would want an attorney with, but other questions she would be willing to answer." After Defendant mentioned an attorney, the police officer told her that if she wanted an attorney he was not going to question her. Defendant then said that she would cooperate and answer some of the police officer's questions.

¶7    Thereafter, the police officer asked Defendant about the box without telling her where it had been found, and Defendant told him that she knew about the box being under the bathroom sink and that the syringes were hers. Defendant also admitted that, two days earlier, she had relapsed from a period of sobriety.

---

3. The police officer testified at trial that he did not use the information he obtained from AP&P as a basis for his initial belief that Defendant was under the influence.

¶8     The police officer took Defendant to the police station and obtained a warrant for a blood and urine sample. The tests later came back negative for any illegal drugs, but Defendant did test positive for hydrocodone, a central nervous system depressant found in prescription pain medications that could have explained all of Defendant's symptoms except for her jitteriness. Defendant also tested positive for diphenhydramine, a central nervous system depressant found in several over-the-counter medications.

¶9     Based on the contents of the box, Defendant was charged with possession or use of a controlled substance and possession of drug paraphernalia. She was also charged with driving under the influence of alcohol or drugs, operating an unsafe or improperly equipped vehicle, and driving without a valid vehicle registration. Defendant filed a motion to suppress the evidence obtained pursuant to the extension of the traffic stop but subsequently withdrew the motion. On the day of trial, Defendant filed a motion to suppress her post-arrest statements, which the trial court denied. Defendant also pled guilty to the vehicle registration charge and the State dismissed the DUI and operation of an unsafe vehicle charges. A jury convicted Defendant of possession or use of a controlled substance and possession of drug paraphernalia.

¶10    On appeal, Defendant first argues that her trial counsel was ineffective for withdrawing her first motion to suppress. Defendant asserts that the police officer extended the scope of the traffic stop without a reasonable suspicion to do so, and thus, any evidence obtained thereafter should have been suppressed. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law, which we review for correctness." *State v. Walker*, 2010 UT App 157, ¶ 13, 235 P.3d 766 (citation and internal quotation marks omitted).

¶11    To prove ineffective assistance of counsel, Defendant must show both "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶12 The Fourth Amendment to the United States Constitution protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. "Although police must have a warrant to conduct most searches and seizures, 'officers may temporarily detain a vehicle and its occupants upon reasonable suspicion of criminal activity for the purpose of conducting a limited investigation of the suspicion.'" *State v. Baker*, 2010 UT 18, ¶ 11, 229 P.3d 650 (quoting *State v. James*, 2000 UT 80, ¶ 10, 13 P.3d 576).

¶13 To determine whether a traffic stop is reasonable under the Fourth Amendment, we apply a two-step test. *Baker*, 2010 UT 18, ¶ 12. First, we must determine "whether the police officer's action [was] justified at its inception" and, second, we must ordinarily determine "whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* (alteration in original) (citation and internal quotation marks omitted).[4] "During a lawful traffic stop, '[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.'"

---

4. As to the first inquiry, Defendant does not dispute that the officer was justified in pulling the vehicle over for having inoperable taillights. *See State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) ("[A] police officer is constitutionally justified in stopping a vehicle if the stop is incident to a traffic violation committed in the officers' presence.") (citation and internal quotation marks omitted).

*Id.* ¶ 13 (alteration in original) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). And "[i]f, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion." *Baker*, 2010 UT 18, ¶ 13. Reasonable suspicion is "suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *State v. Hogue*, 2007 UT App 86, ¶ 7, 157 P.3d 826 (citation and internal quotation marks omitted).

¶14    "Utah courts generally find that probable cause for DUI exists when slurred speech, bloodshot eyes, and the smell of alcohol are accompanied by failed field sobriety tests." *State v. Worwood*, 2007 UT 47, ¶ 35, 164 P.3d 397. "Of course, when some but not all of these factors are present, an officer may at least have a reasonable, articulable suspicion that a suspect has been driving under the influence, and that suspicion will warrant prolonging a suspect's detention for further investigation so that the officer's suspicion can be dispelled or confirmed." *State v. Beckstrom*, 2013 UT App 104, ¶ 9, 300 P.3d 773.

¶15    Defendant argues that the police officer observed only "innocent behavior" before he asked Defendant to exit her vehicle and that prescription drug use could explain all of Defendant's behavior. We disagree.[5]

¶16    To begin with, the police officer did not learn about Defendant's prescription drug use until after Defendant got out of her vehicle. Before the police officer asked Defendant to get out of her vehicle, he observed that Defendant was "jittery," she was "dancing around in the car," her pupils were constricted, and her

---

5. In so stating, we do not accept the premise that innocent behavior precludes reasonable suspicion. *See, e.g., United States v. Sokolow*, 490 U.S. 1, 9 (1989) (noting that a collection of circumstances, each "quite consistent with innocent travel," may, "taken together, . . . amount to reasonable suspicion").

speech was slurred. In addition, although Defendant stated that she was upset because AP&P interrupted her daughter's birthday party, she also "started telling [the officer] different stories that . . . didn't make sense." These circumstances provided the police officer with adequate suspicion that Defendant was operating her vehicle under the influence and justified extending the stop to inquire about Defendant's sobriety. *See Hogue*, 2007 UT App 86, ¶ 8 (concluding that the defendant's "dilated pupils, nervous demeanor, and jerky body movements" provided the officer with reasonable suspicion that the defendant was operating his vehicle under the influence).

¶17 After Defendant got out of her vehicle, the police officer learned that she was on several prescription medications. Admittedly, Defendant's prescription medications could have accounted for her constricted pupils. And at the time Defendant told the police officer about her medications, she also claimed that she was not under the influence because she was immune to any ill-effects of her pain medications given her longstanding use of them. To the extent the officer believed this claim, he would be rightly concerned that her behavior was explained by ingestion of alcohol or illegal drugs. Accordingly, given the totality of the circumstances, we conclude that the police officer possessed reasonable, articulable suspicion that Defendant was under the influence of some intoxicant and that he was therefore entitled to extend the stop to administer field sobriety tests. *See Beckstrom*, 2013 UT App 104, ¶¶ 3, 10–11 (concluding that glossy eyes, slurred speech, and the smell of alcohol justified the brief detention necessary to administer field sobriety tests).

¶18 Because the police officer's observations of Defendant provided him with reasonable suspicion to administer the tests, Defendant cannot show that her first motion to suppress would have been granted had her trial counsel not withdrawn it. Having determined that Defendant's first motion to suppress would not have succeeded on the merits, we conclude that Defendant's ineffective-assistance claim based on the first motion to suppress

necessarily fails. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶19   Defendant next argues that her trial counsel rendered ineffective assistance by failing to timely file her second motion to suppress, based on the claimed violation of Defendant's *Miranda* rights. Defendant's second ineffective-assistance claim also presents a question of law. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To prove ineffective assistance of counsel, Defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶20   As noted above, "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 384. Before we reach Defendant's ineffective-assistance claim, "'we must first decide whether [D]efendant's *Miranda* rights were actually violated,' because '[i]f they were not, trial counsel's tardiness in bringing the suppression motion was not prejudicial and the ineffective assistance claim fails.'" *State v. Ferry*, 2007 UT App 128, ¶ 12, 163 P.3d 647 (alteration in original) (quoting *State v. Snyder*, 860 P.2d 351, 354 (Utah Ct. App. 1993)).

¶21   The Fifth Amendment to the United States Constitution "protects individuals from being *compelled* to give evidence against themselves." *State v. Rettenberger*, 1999 UT 80, ¶ 11, 984 P.2d 1009 (emphasis in original) (citations and internal quotation marks omitted). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that law enforcement officers conducting custodial interrogations must give certain warnings prior to questioning suspects and must follow certain procedures after giving these warnings. *Id.* at 444, 478–79. One of the warnings is that the defendant has the right to an attorney during custodial interrogation. *See id.* at 479. If the defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444–45.

¶22    The Utah Supreme Court has held that if "a defendant makes an ambiguous or equivocal request for an attorney, questioning with respect to the subject matter of the investigation must immediately stop, and any further questioning must be limited to clarifying the request. If the defendant then makes clear that he or she desires to have counsel present, further questioning is prohibited." *State v. Wood*, 868 P.2d 70, 85 (Utah 1993), *overruled on other grounds by State v. Mirquet*, 914 P.2d 1144, 1147 n.2 (Utah 1996). *See State v. Leyva*, 951 P.2d 738, 743 (Utah 1997) (reaffirming *Wood* as applied to suspects who have been given, but not yet waived, their *Miranda* rights); *State v. Gutierrez*, 864 P.2d 894, 901 (Utah Ct. App. 1993) (noting that the clarification approach for evaluating an equivocal invocation of the right to counsel consists of two inquiries: "first, whether an accused actually invoked [a *Miranda* right], and second, if so, whether that request was scrupulously honored through clarification efforts") (alteration in original) (citation and internal quotation marks omitted). "A simple, straightforward effort to clarify the request is appropriate." *Wood*, 868 P.2d at 84. "When an ambiguous request is accompanied by a voluntary, expressed willingness to talk, that should not preclude all further conversation between the suspect and the interrogating officer." *Id.*

¶23    Here, Defendant's request for an attorney was ambiguous. The police officer testified that he read Defendant her *Miranda* rights and asked her if she understood her rights. Defendant stated that she did, and so the police officer asked Defendant if she was willing to talk to him without an attorney present. Defendant said that she would be willing to cooperate even though "she knew it would go against her" and that "there would be some questions she probably would want an attorney with, but other questions she would be willing to answer." Defendant's remark that she would want an attorney for some questions constituted an ambiguous request for an attorney, and thus, it was the police officer's responsibility to clarify Defendant's request.

¶24    The police officer did so here. After Defendant mentioned the possibility of conferring with an attorney, the police officer told

Defendant that if she wanted an attorney he would not be able to talk to her. Defendant stated that she would "talk a little bit." The police officer testified that he then "made sure that [Defendant] understood what her rights were" and "that she could have her attorney," and that Defendant "said that she wanted to cooperate." By ensuring that Defendant understood her rights and that she could have an attorney present before questioning, the police officer fulfilled his duty to clarify Defendant's request for an attorney. Although Defendant's initial request was ambiguous, she subsequently "expressed [a] willingness to talk" to the police officer after he clarified that she understood her rights. *See id.* Accordingly, Defendant's *Miranda* rights were not violated when she chose to answer the questions asked, and she cannot show that trial counsel's tardiness in bringing the second motion to suppress was prejudicial. *See State v. Ferry*, 2007 UT App 128, ¶ 12, 163 P.3d 647.

¶25    Moreover, Defendant was not prejudiced by trial counsel's late filing of the second suppression motion because a minute entry reflects that although the trial court found Defendant's motion untimely, the court still allowed Defendant's counsel to argue the motion prior to trial (outside of the potential jurors' presence) before ultimately denying it. Consequently, because we conclude that Defendant's *Miranda* rights were not violated and because the trial court considered and denied Defendant's motion, Defendant cannot demonstrate that she was prejudiced by trial counsel's late filing of the motion, and thus, she cannot prove that trial counsel was ineffective for failing to file the second motion to suppress in a more timely manner.[6]

¶26    We conclude that Defendant cannot demonstrate that the outcome of her trial would have been different had counsel not

---

6. Defendant also claims that the trial court erred when it failed to consider Defendant's second motion to suppress prior to the start of her trial. This contention is without merit. As previously indicated, the court addressed and denied Defendant's motion before her trial began.

withdrawn her first motion to suppress because the motion would have been denied. Defendant's behavior provided the police officer with reasonable, articulable suspicion to extend the traffic stop and administer field sobriety tests. We further conclude that Defendant cannot demonstrate that the outcome of her trial would have been different had counsel timely filed her second motion to suppress because that motion would also have been denied, because Defendant's *Miranda* rights were not violated.

¶27     Affirmed.

———————