# IN THE COURT OF APPEALS OF IOWA

No. 15-0929
Filed September 14, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**SHELLY LEE SNOW,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Robert J. Dull, District Associate Judge.

Defendant appeals her convictions for operating while intoxicated and possession of methamphetamine, enhanced, contending the district court erred in denying her motion to suppress evidence. **AFFIRMED.**

Michael J. Jacobsma of Jacobsma & Clabaugh, P.L.C., Sioux Center, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Following a trial on the minutes of testimony, Shelly Snow was convicted of possession of a controlled substance (methamphetamine), in violation of Iowa Code section 124.401(5) (2013), and operating while intoxicated, first offense, in violation of Iowa Code section 321J.2. On appeal, she contends the district court erred in denying her motion to suppress evidence allegedly obtained as a result of a traffic stop conducted in violation of her constitutional right to be free from unreasonable search and seizure.

We review claims of constitutional violations de novo in light of the totality of the circumstances. *See State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001). In doing so, we examine the entire record, including evidence presented at the suppression hearing. *See State v. Jones*, 666 N.W.2d 142, 145 (Iowa 2003). Although our review is de novo, we do afford the decision of the district court deference for policy reasons. *See State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001); *In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016) (stating appellate courts should exercise "de novo review with deference" in "recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts of a case; and recognition there are often undercurrents in a case—not of record and available for appellate review—the district court does and should take into account when making a decision").

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The "textual 'touchstone of the Fourth Amendment is reasonableness.'" *State v. Lewis*, 675 N.W.2d 516, 529 (Iowa 2004) (citation omitted). The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The Fourth Amendment is implicated when an officer seizes a person. *See State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). During traffic stops, temporary detention constitutes a seizure of persons and therefore must be reasonable under the circumstances. *See Whren v. United States*, 517 U.S. 806, 809–10 (1996).

The text of article I, section 8, of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. "[W]hile United States Supreme Court cases are entitled to respectful consideration, we will engage in independent analysis of the content of our state search and seizure provisions." *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010). It is the responsibility of Iowa courts to say what the Iowa Constitution means. *See State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

The traffic stop at issue occurred in the early morning hours on July 9, 2013. Local authorities had been watching Snow for several months as a suspected drug user and drug trafficker. On the night at issue, a Sioux County deputy sheriff was notified that Snow's vehicle was parked at the residence of a suspected drug user and drug trafficker. The deputy proceeded to the home and surveilled it for an hour and a half to two hours. He heard people moving around

in the dark, which he thought suspicious. He saw two people leave the residence in a vehicle registered to Snow. The deputy followed the vehicle. The deputy observed the vehicle's brake light was out, and he initiated a traffic stop. The deputy issued a warning to Snow and told her the purpose of the stop had concluded.

After telling Snow the purpose of the stop had concluded, the deputy asked to search the vehicle. The deputy told Snow he had reasonable suspicion of drug activity. Snow initially consented to the search but then refused the search following a conversation with her passenger. The passenger was known to law enforcement as a possible drug trafficker with prior drug convictions. When Snow revoked her initial consent, the deputy told her he was going to request a canine unit to assist because of his suspicion of drug activity. He told her she was no longer free to leave. Around this time, Snow's passenger became aggressive with the deputy, and the deputy had the passenger sit in his patrol car. After the deputy called for the canine unit, he told Snow she would need to remove her own dog from the car. The deputy told Snow it was his goal to get Snow going as soon as possible. Snow then told the officer to "go ahead." The deputy then asked Snow to confirm she was giving him consent to search the car, and she did. The deputy searched the vehicle.

As a result of the search, the deputy found a substance later confirmed to be methamphetamine. Snow admitted it was hers. A second deputy arrived to aid in the search. The deputies found two straws with crystal residue on them, a glass pipe with burnt residue on it, and a small plastic bag with crystal residue on it. Snow admitted these items belonged to her. Snow also admitted she had last

used crystal methamphetamine at 6:00 p.m. Snow was transported to the sheriff's office, where she admitted she had methamphetamine hidden in her bra. She provided the methamphetamine to the deputy. She also provided a urine sample, which was positive for the presence of amphetamines, methamphetamine, and ecstasy.

The lawfulness of the initial stop is not at issue. "When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014). "The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the stop." *Id.* at 366. Here, the deputy observed Snow's vehicle's brake light was not in working order. He thus had probable cause to initiate the traffic stop.

Snow does challenge the duration of the stop. Specifically, she contends it was unlawful for the officer to detain her for additional investigation after the purpose of the traffic stop had been completed. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been— completed." *Id.* at 1614. It is not disputed in this case that the deputy had completed the purpose of the stop prior to seeking consent to search—he explicitly told Snow the purpose of the stop was complete prior to asking. That fact alone, however, is not dispositive of the issue. "If, upon reasonable

investigation surrounding the stop, the officer has a valid suspicion of other wrongdoing not the purpose of the stop, he can broaden the scope of the detention." *State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001); *see also Rodriguez*, 135 S. Ct. at 1614. The question presented is thus whether the deputy had reasonable suspicion of other wrongdoing to support his further detention of Snow. *See In re Pardee*, 872 N.W.2d 384, 393 (Iowa 2015) (providing an officer may prolong a traffic stop when supported by reasonable suspicion).

On de novo review, we conclude the deputy had reasonable suspicion of wrongdoing sufficient to justify extension of the stop. "Reasonable suspicion . . . exists when articulable facts and all the circumstances confronting the officer at the time give rise to a reasonable belief that criminal activity may be afoot." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). We evaluate the existence of reasonable suspicion by considering all of the circumstances together. *See id.* (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002)). Here, law enforcement had been watching Snow for several months and had information to believe she was involved in drug trafficking. *See State v. Hinds*, No. 1 CA-CR 07-0823, 2008 WL 4561446, at *3–4 (Ariz. Ct. App. Oct. 7, 2008) (finding investigation of subject over several hours during which subject engaged in activity consistent with drug trafficking supported reasonable suspicion for traffic stop); *Commonwealth v. Williams*, No. 1902 WDA 2013, 2014 WL 10802660, at *8 (Pa. Super. Ct. Nov. 7, 2014) (ruling extensive surveillance of defendant leading to belief defendant was involved in drug trafficking supported finding of reasonable suspicion to support traffic stop

of defendant's vehicle). The deputy was tipped to Snow's location at the residence of a suspected drug user and trafficker. *See U.S. v. Lyons*, 687 F.3d 754, 764–65 (6th Cir. 2012) (stating the DEA's observation of defendant's presence at a location suspected to be part of a drug trafficking operation within the context of the DEA's lengthy investigation supported reasonable suspicion for the traffic stop); *Hampton v. Commonwealth*, 231 S.W.3d 740, 747 (Ky. 2007) (holding knowledge of drug activity at house supported traffic stop of person leaving house); *State v. Alderete*, 255 P.3d 377, 383 (N.M. Ct. App. 2011) (ruling surveillance of suspected drug house supported reasonable suspicion for traffic stop of vehicle leaving house); *State v. Quartier*, 753 N.W.2d 885, 890 (S.D. 2008) (finding surveillance of methamphetamine distributor's residence supported traffic stop of van leaving said residence); *cf. State v. Washington*, 866 So.2d 1058, 1062–63 (La. Ct. App. 2004) (providing brief "mere presence" at surveilled property alone insufficient to support reasonable suspicion). The deputy observed suspicious activity in the middle of the night at the house. *See State v. Donnell*, 239 N.W.2d 575, 578 (Iowa 1976) (recognizing suspicious activity "occurred at 2:00 A.M., a time when most persons in a residential area would be asleep"); *see also State v. Fornof*, 179 P.3d 954, 959 (Ariz. Ct. App. 2008) (stating late-night suspicious activity sufficient to justify traffic stop); *State v. Welker*, 340 P.3d 174, 176 (Utah Ct. App. 2014) (finding officer had reasonable suspicion justifying stop where car was stopped "late at night in an area in which the officer was investigating 'a contemporaneous report of suspicious circumstances'" (citation omitted)). Snow was riding with a passenger who had prior drug convictions and was believed to be a trafficker. *See United*

*States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (holding officer's question about marijuana possession to passenger who had been arrested for marijuana possession three days prior was not unreasonable seizure); *People v. Perez*, 681 N.E.2d 173, 178–79 (Ill. App. Ct. 1997) (ruling the officer's information from dispatch about the passenger's prior drug conviction, which was later determined to be incorrect, was a factor supporting reasonable suspicion justifying a further detention after the officer told the defendant driver he was free to leave); *State v. Parker*, No. 110,883, 2014 WL 702564, at *2 (Kan. Ct. App. Feb. 21, 2014) (finding vehicle passenger's behavior supported reasonable suspicion of drug activity); *cf. United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994) (noting criminal history alone insufficient to generate reasonable suspicion, but when coupled with "other factors that do foster a reasonable suspicion of current criminal activity," may be considered). The investigating deputy had training in anti-drug enforcement and training in detecting those operating under the influence. *See State v. Watts*, 801 N.W.2d 845, 855 (Iowa 2011) (considering officer's drug training in finding probable cause). The deputy observed Snow's pupils were dilated, indicating she was operating under the influence. *See People v. Yates*, No. 1-12-1549, 2013 WL 1869830, at *3 (Ill. App. Ct. May 2, 2013) providing (bloodshot eyes with dilated pupils supported finding of reasonable suspicion); *State v. Weseman*, No. A14-1986, 2015 WL 4877755, at *2 (Minn. Ct. App. Aug. 17, 2015) (ruling dilated pupils gave rise to reasonable suspicion to expand traffic stop); *State v. Stewart*, 340 P.3d 802, 807 (Utah Ct. App. 2014) (holding constricted pupils supported finding of reasonable suspicion). When these facts are considered together, the officer had

reasonable suspicion to detain Snow for further investigation. *See United States. v. Mason,* 628 F.3d 123, 129 (4th Cir. 2010) (noting that although "each component that contributes to reasonable suspicion might not alone give rise to reasonable suspicion. . . . the existence of reasonable suspicion is a case-specific inquiry, based on the totality of the circumstances"); *Bergmann*, 633 N.W.2d at 338 (finding association with drug traffickers a factor in supporting reasonable suspicion).

Because we conclude the traffic stop was supported by probable cause and the continued detention was supported by reasonable suspicion of criminal activity, we need not address Snow's contention regarding whether she consented to the search of her vehicle. The district court did not err in denying Snow's motion to suppress. We affirm her convictions.

**AFFIRMED.**