Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 142. No. 13CA2098. People v. Chipman.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 142

 
 



 Court of Appeals No. 13CA2098
 Jefferson County District Court No. 00CR3080
 Honorable Margie L. Enquist, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Michael James Chipman,

 Defendant-Appellant.


 APPEAL DISMISSED IN PART AND ORDER AFFIRMED

 Division II
 Opinion by JUDGE BERNARD
 J. Jones and Harris, JJ., concur

 Announced October 8, 2015


 Cynthia H. Coffman, Attorney General, Patricia R. Van Horn, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 The Noble Law Firm, LLC, Antony Noble, Ruchi Kapoor, Lakewood, Colorado, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  A jury convicted defendant, Michael James Chipman, of several felonies. He appealed. A division of this court affirmed some of his convictions, but it reversed others. On retrial, a second jury convicted him of lesser, although related, charges. The same attorney represented defendant at both trials.

 Â¶2Â Â Â Â Â Â Â Â  Defendant contended in a Crim. P. 35(c) motion that his trial counsel had been ineffective for three reasons. One reason arose out of counselâs representation in the first trial. The postconviction court denied the Crim. P. 35(c) motion, and defendant filed this appeal.

 Â¶3Â Â Â Â Â Â Â Â  This appeal poses a question of first impression in Colorado: Is a postconviction claim that a defendantâs trial counsel was ineffective moot if an appellate court has granted the defendant relief in a previous direct appeal? In the context of the facts of this case, we conclude that the answer to the question is âyesâ because defendant received all the relief to which he was entitled when the division reversed the convictions; the postconviction court could not have given him anything more. We therefore dismiss defendantâs appeal of this issue.

 Â¶4Â Â Â Â Â Â Â Â  We affirm the postconviction courtâs decision to deny the other two claims of ineffective assistance in defendantâs Crim. P. 35(c) motion.

 Â¶5Â Â Â Â Â Â Â Â  Last, the Crim. P. 35(c) motion also asserted that defendant had been incompetent during his first trial. The postconviction court, the motion continued, should therefore grant him a new trial on the convictions that the division had affirmed in the direct appeal. The postconviction court denied this request as well as defendantâs additional motion for a second retroactive competency examination. We affirm those decisions, too.

 I. Background

 Â¶6Â Â Â Â Â Â Â Â  Defendant occupied the apex of a loversâ triangle. He was married. But his wife knew about his intimate relationship with another woman, who was the victim of his crimes in this case. His wife approved when the victim moved into the marital home.

 Â¶7Â Â Â Â Â Â Â Â  Because defendant had a drinking problem, his wife decided to divorce him. She obtained a court order that forced him to leave the marital home. The victim continued to live there with defendantâs now ex-wife.Â 

 Â¶8Â Â Â Â Â Â Â Â  Things got rough from there on out. Defendant returned to his home at least twice, and he committed crimes both times.

 A. The First Incident

 Â¶9Â Â Â Â Â Â Â Â  Defendant returned to the marital home in October 2000. The victim answered the door. Defendant was drunk, and he was carrying a pistol in a bag. He demanded that the victim let him in so that he could take a shower and so that he could speak with his ex-wife.

 Â¶10Â Â Â Â Â Â Â Â  The victim told him to leave, and she called the police. Police officers arrested defendant, and the prosecution charged him with (1) criminal trespass; (2) carrying a concealed weapon; and (3) prohibited use of a weapon.

 Â¶11Â Â Â Â Â Â Â Â  The ex-wife went to court and obtained a restraining order. The order forbade defendant from approaching or contacting his ex-wife and from going to the marital home.

 B. The Second Incident

 Â¶12Â Â Â Â Â Â Â Â  Despite the restraining order, defendant went back to the marital home in September 2001. The victim came to the door, but she did not open it. She locked it instead, and she told defendant that he had to leave.

 Â¶13Â Â Â Â Â Â Â Â  Defendant became very angry. He told the victim to open âthe goddamnâ door. She called the police.

 Â¶14Â Â Â Â Â Â Â Â  She thought that defendant was going to leave, but she was wrong. He walked to his car, where he grabbed a .44 magnum revolver.

 Â¶15Â Â Â Â Â Â Â Â  Now armed, he returned to the front door, and he forced it open. He found the victim in the kitchen.

 Â¶16Â Â Â Â Â Â Â Â  He walked up to her, and he told her that she should not call the police. When she replied that the police were on their way, he said, âI told you not to call the police.â

 Â¶17Â Â Â Â Â Â Â Â  He pointed the revolver at her chest. She dove at the pistol, and she pushed the barrel toward the ground, away from her torso. Defendant fired a shot, and the bullet hit the victim in the hip. Defendant said, âGreat reflexes, Iâm impressed.â The victim struggled with defendant over the gun, and she managed to disable it by pulling out its cylinder.

 Â¶18Â Â Â Â Â Â Â Â  Police officers arrived. They arrested defendant. The prosecution charged him with attempted first degree murder, first degree burglary, menacing, first degree assault, aggravated intimidation of a victim or a witness, two crime-of-violence sentenceÂ enhancers, violating bail bond conditions, and violating a restraining order.

 C. The Trials

 Â¶19Â Â Â Â Â Â Â Â  In the first trial, the jury convicted defendant of all the charges from both of the incidents. Defendant appealed. A division of this court affirmed the convictions on the charges that arose out of the October 2000 incident. People v. Chipman, (Colo. App. No. 02CA1917, Feb. 8, 2007)(not published pursuant to C.A.R. 35(f)). But the division reversed most of the convictions that arose out of the September 2001 incident, except for the convictions for violating bail bond conditions and violating a restraining order. Id. at 17-18. The division ordered a new trial on the convictions that it had reversed. Id at 18.

 Â¶20Â Â Â Â Â Â Â Â  The jury in the second trial convicted defendant of attempted second degree murder, first degree burglary, menacing, second degree assault, reckless endangerment, and trespass. Defendant filed another appeal, but the court of appeals later dismissed it at his request.

 D. The Postconviction Proceedings

 Â¶21Â Â Â Â Â Â Â Â  Defendant then filed a pro se Crim. P. 35(c) motion. The postconviction court appointed counsel to represent him, and counsel filed a supplemental motion. The supplemental motion raised the three contentions of ineffective assistance that we consider in this appeal. One of those contentions focused on the quality of trial counselâs representation in the first trial. Defendant also claimed that he had been incompetent during the first trial.

 Â¶22Â Â Â Â Â Â Â Â  The postconviction court denied defendantâs three ineffective assistance of counsel claims without a hearing, but it set an evidentiary hearing on his incompetency claim. The court ordered a psychiatrist to perform a retroactive competency evaluation of defendant.

 Â¶23Â Â Â Â Â Â Â Â  After the evaluation, the psychiatrist wrote a report that contained his opinion that defendant had been competent during the first trial. After reviewing this report, the prosecution filed a motion asking the postconviction court to vacate the evidentiary hearing and to deny defendantâs Crim. P. 35(c) claim that he had been incompetent during his first trial. Defendant filed a motion asking for a second competency examination. The postconvictionÂ court granted the prosecutionâs motion, and it denied defendantâs motion.

 II. Ineffective Assistance of Counsel

 Â¶24Â Â Â Â Â Â Â Â  Defendant contends that the postconviction court erred when, without a hearing, it denied his three Crim. P. 35(c) claims that his trial counsel had been ineffective. We disagree.

 A. Standard of Review

 Â¶25Â Â Â Â Â Â Â Â  âWhen the motion, the files, and the record clearly establish that the defendant is not entitled to relief, a court may deny a Crim. P. 35(c) motion without a hearing.â People v. Osorio, 170 P.3d 796, 799 (Colo. App. 2007); see also Crim. P. 35(c)(3)(IV). A postconviction court may also deny a Crim. P. 35(c) motion without a hearing if âthe allegations of counselâs deficient performance are merely conclusory, vague, or lacking in detail.â Osorio, 170 P.3d at 799.

 Â¶26Â Â Â Â Â Â Â Â  We review a postconviction courtâs summary denial of a defendantâs postconviction motion for relief de novo. People v. Trujillo, 169 P.3d 235, 237 (Colo. App. 2007).

 B. Legal Principles

 Â¶27Â Â Â Â Â Â Â Â  Defendants have a Sixth Amendment right to the reasonably effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984); Ardolino v. People, 69 P.3d 73, 76 (Colo. 2003). âBecause the purpose of the requirement of effective assistance is to ensure a fair trial, however, the benchmark for judging any claim of ineffectiveness must be whether counselâs conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.â Ardolino, 69 P.3d at 76.

 Â¶28Â Â Â Â Â Â Â Â  Based on this purpose, defendants must show that (1) their trial counselâs performance was deficient; and (2) their counselâs deficient performance prejudiced them. Strickland, 466 U.S. at 687; Ardolino, 69 P.3d at 76.

 Â¶29Â Â Â Â Â Â Â Â  To establish deficient performance, defendants bear the burden of showing that, âin light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance.â Strickland, 466 U.S. at 690. In evaluating such a claim, courts must (1) âindulge a strongÂ presumption that counselâs conduct falls within the wide range of reasonable professional assistance,â Ardolino, 69 P.3d at 76; and (2) avoid âthe distorting effects of hindsight,â Trujillo, 169 P.3d at 238.

 Â¶30Â Â Â Â Â Â Â Â  Defendants must therefore âovercome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.â Davis v. People, 871 P.2d 769, 772 (Colo. 1994)(internal quotation marks omitted). Indeed, â[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.â Ardolino, 69 P.3d at 76.

 Â¶31Â Â Â Â Â Â Â Â  To establish prejudice, defendants âmust demonstrate a reasonable probability that, but for counselâs unprofessional errors, the result of the proceeding would have been different.â Osorio, 170 P.3d at 799. âA reasonable probability is a probability sufficient to undermine confidence in the outcome.â People v. Karpierz, 165 P.3d 753, 759 (Colo. App. 2006).

 Â¶32Â Â Â Â Â Â Â Â  Because defendants must show both deficient performance and prejudice, courts may deny their requests for postconviction relief if they decide that the defendants did not satisfy either Strickland prong. Osorio, 170 P.3d at 800.

 C. Analysis

 1. Testing the Blood on Defendantâs Clothing

 Â¶33Â Â Â Â Â Â Â Â  Defendant contends that his trial counsel was ineffective in both trials because he did not ask an expert to test the blood on the clothes that he was wearing when the police arrested him during the second incident. We analyze these claims separately in the context of each trial. After doing so, we conclude that we disagree with defendantâs contentions, but for different reasons than those relied on by the trial court.

 a. The First Trial

 Â¶34Â Â Â Â Â Â Â Â  Defendant contends that his counsel was ineffective during the first trial because tests of the blood on his clothing would have informed the jury that some of the blood on his clothes was his own. The presence of his blood on his clothes, his contention continues, would have supported his defense at the first trial that he had entered the marital home during the second incident intending to kill himself, not the victim.

 Â¶35Â Â Â Â Â Â Â Â  But, by the time defendantâs postconviction counsel filed the supplemental Crim. P. 35(c) motion, a division of this court had already reversed the convictions from the second incident â attempted first degree murder, first degree burglary, menacing, first degree assault, aggravated intimidation of a victim or witness, and two crime-of-violence sentence enhancers â to which this evidence pertained. Chipman, No. 02CA1917, slip op. at 17-18. And the division had remanded the case to the trial court for a new trial on those charges. Id. at 18.

 Â¶36Â Â Â Â Â Â Â Â  We recognize that the division affirmed two convictions that arose out of the second incident for violating bail bond conditions and violating a restraining order. But defendant did not contend in his Crim. P. 35(c) motion or in his written reply to the prosecutionâs response to his motion that his intended suicide defense was relevant to those convictions. Rather, his Crim. P. 35(c) motion asserted that, had trial counsel tested the blood on his clothes, âthe test results could have established that [defendant] was covered in his own blood.â In turn, the presence of defendantâs blood on his clothes âwould have . . . supported his theory of defense that he intended to take his own life . . . rather thanâ to harm the victim. (Emphasis added.) And the test results âcould also have disproved any inference [drawn by] the prosecution that [defendant] was covered in [the victimâs] blood.â

 Â¶37Â Â Â Â Â Â Â Â  Defendantâs Crim. P. 35(c) contention did not refer to the convictions for violating bail bond conditions or for violating a restraining order, and it did not discuss the conduct upon which those convictions were based. It was not until we asked for supplemental briefs on the issue of mootness that defendant linked his suicide defense with the convictions for violating bail bond conditions and for violating a restraining order. By then, it was too late. See People v. Goldman, 923 P.2d 374, 375 (Colo. App. 1996)(âAllegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.â).

 Â¶38Â Â Â Â Â Â Â Â  These procedural facts raise the question whether defendantâs ineffective assistance contention concerning the first trial is moot. And we must answer that question before we analyze the contentionâs merits because mootness is a threshold question concerning the scope of our jurisdiction. USAA v. Parker, 200 P.3d 350, 356 (Colo. 2009)(â[A]s a threshold jurisdictional matter, [the court] must determine whether the current appeal is moot before proceeding to the merits of the case.â).Â 

 Â¶39Â Â Â Â Â Â Â Â  An issue is moot if our decision âwill have no practical effect on an actual or existing controversy.â People v. Garcia, 2014 COA 85, Â¶9. In other words, we will not issue an opinion deciding the merits of an issue if we cannot grant relief. See People v. Devorss, 277 P.3d 829, 833 (Colo. App. 2011).

 Â¶40Â Â Â Â Â Â Â Â  If an appellate court reverses a conviction and remands the case for a new trial, âthe original conviction has . . . been wholly nullified and the slate wiped clean.â North Carolina v. Pearce, 395 U.S. 711, 721 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). This concept is often called the âclean slate rule.â

 Â¶41Â Â Â Â Â Â Â Â  What does the clean slate rule mean for this case? It obviously means that there was âno double jeopardy bar to retryingâ defendant, who had âsucceeded in overturning his conviction.â Bullington v. Missouri, 451 U.S. 430, 442 (1981); accord Lockhart v. Nelson, 488 U.S. 33, 38 (1988); People v. Fueston, 749 P.2d 952, 959 (Colo. 1988). (We note that one common exception to this application of the clean slate rule â that the conviction was reversed because there was insufficient evidence to support it, seeÂ Fueston, 749 P.2d at 959; People v. Miralda, 981 P.2d 676, 680 (Colo. App. 1999) â does not apply to this case.)

 Â¶42Â Â Â Â Â Â Â Â  But we conclude that, by a logical extension of its reasoning, the clean slate rule also means that defendantâs ineffective assistance claim that focused on his first trial is moot. See Palmer v. Clarke, 408 F.3d 423, 443-44 (8th Cir. 2005)(â[A]ny errors resulting from [the defendantâs] first sentencing hearing were cured by his second and third sentencing hearings, and thus the clean slate rule eliminated any possible danger of prejudice from the alleged deficient performance.â).

 Â¶43Â Â Â Â Â Â Â Â  In reaching this conclusion, we are persuaded by decisions of courts from other jurisdictions. Those courts have concluded that contentions like the one that defendant raises in this case are moot. See Williams v. State, 574 So. 2d 876, 879 (Ala. Crim. App. 1990)(â[S]ince [the defendantâs] first conviction was reversed and he received another trial with different counsel, any question concerning his first counselâs effectiveness would be moot.â); Cunningham v. State, 475 S.E.2d 924, 928 (Ga. Ct. App. 1996)(trial courtâs decision to grant a new trial rendered moot the defendantâs claim that trial counsel was ineffective because counsel did notÂ move for a directed verdict in the first trial); State v. Palmer, 600 N.W.2d 756, 774 (Neb. 1999)(the defendantâs allegations of ineffective assistance of counsel were moot because the court reversed the convictions from the two trials to which his allegations related); State v. OâCarroll, 896 A.2d 1125, 1143 (N.J. Super. Ct. App. Div. 2006)(âIn light of our decision that defendant is entitled to a new trial, his arguments respecting ineffective assistance of counsel, which we would otherwise preserve for a motion for post-conviction relief . . . are moot.â (citation omitted)); Commonwealth v. Miller, 424 A.2d 531, 532 (Pa. Super. Ct. 1981)(concluding that the defendantâs contention that his âcounsel at the first sentencing proceeding was ineffectiveâ was moot because the first sentence was vacated); Lopez v. State, 428 S.W.3d 271, 282-83 (Tex. App. 2014)(âInsofar as [the defendant] argues that he received ineffective assistance of counsel at his first punishment hearing, his claim is moot. The results of that hearing were entirely supplanted when the trial judge granted [him] a fresh punishment hearing and a reduced sentence.â); see also United States v. Strother, 387 F. Appâx 508, 510 (5th Cir. 2010)(The defendantâs claim that his trial counsel was ineffective was moot because he was âgranted a new trial.â)(unpublished opinion)(per curiam); Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996)(âEven if we concluded that [the defendant] was denied his right to testify during his first trial, the appropriate remedy would be to grant a new trial. Therefore, because [the defendant] has already received a second trial, this issue is moot.â)(citation omitted).

 Â¶44Â Â Â Â Â Â Â Â  (We recognize that some courts in other jurisdictions have proceeded to the merits of an ineffective assistance of counsel claim under analogous procedural circumstances. See, e.g., Harris v. State, 659 S.E.2d 140, 145-46 (S.C. 2008)(addressing the merits of the defendantâs claim despite the fact that the defendantâs motion for a mistrial was granted and he received a new trial); Commonwealth v. Mattos, 728 N.E.2d 946, 952-53 (Mass. App. Ct. 2000)(same). But the courts in those cases did not address the question of mootness.)

 Â¶45Â Â Â Â Â Â Â Â  Not only was the slate wiped clean when the division resolved the direct appeal, but it granted the same relief â reversing the convictions concerning the second incident and ordering a new trial â that the postconviction court would have granted if it had concluded that trial counsel had been ineffective in the first trial.Â See Crim. P. 35(c)(3)(V); see also, e.g., Strickland, 466 U.S. at 687; Ardolino, 69 P.3d at 76. So, even if we agreed with defendantâs contention on the merits, this issue is moot because we could not grant him any relief beyond that which he has already received.

 Â¶46Â Â Â Â Â Â Â Â  To summarize our holding, because mootness is a threshold issue involving questions of this courtâs jurisdiction, we must address it before we reach the merits of defendantâs contention. See Parker, 200 P.3d at 356. Because we have answered that threshold question by concluding that the contention is moot, we dismiss the appeal of this issue. See Devorss, 277 P.3d at 833.

 b. The Second Trial

 Â¶47Â Â Â Â Â Â Â Â  Defendant contends that he was prejudiced at his second trial because his counsel did not retain an expert to test the blood on his clothing. Specifically, he submits that the bloody clothing was âa large part of the prosecutionâs case,â so his attorney should have taken steps to refute the prosecutionâs proof. We conclude that defendant was not entitled to a hearing on this contention.

 Â¶48Â Â Â Â Â Â Â Â  We conclude, for the following reasons, that the record supports the postconviction courtâs determination that, âeven if theÂ blood had been tested and found to belong to . . . [d]efendant,â such evidence âwould not have changed the outcome of this case.â

 Â¶49Â Â Â Â Â Â Â Â  First, the jury learned during the second trial that defendant had cuts on his hands during the second incident. And the prosecution did not present any evidence to suggest that the blood on defendantâs clothes came only from the victim. The jury could therefore have inferred that some of the blood on defendantâs clothing was his own. See People v. Apodaca, 998 P.2d 25, 29 (Colo. App. 1999)(concluding that a defendant did not show prejudice stemming from counselâs failure to have blood stains tested where âevidence presented at trial showed that both defendant and the victim were injured in the altercationâ).

 Â¶50Â Â Â Â Â Â Â Â  Second, the record supports the postconviction courtâs observation that the fact that defendantâs hands had been bleeding did not, by itself, lend much weight to an inference that he intended to kill himself instead of the victim. Our review of the record did not turn up any other evidence supporting this inference. Defendant did not make any statements touching on suicide before or during the second incident, and no one testified that his hands were cut before or after his struggle with the victim.

 Â¶51Â Â Â Â Â Â Â Â  In other words, even if we assume for the purposes of argument that trial counselâs performance was deficient on this issue, defendant did not demonstrate that there was a reasonable probability â meaning a probability sufficient to undermine our confidence in the juryâs verdict â that the result of the second trial would have been different. See Osorio, 170 P.3d at 799; Karpierz, 165 P.3d at 759. And the record likewise supports the trial courtâs determination that it could deny this claim without holding an evidentiary hearing. See Osorio, 170 P.3d at 799 (a postconviction court may summarily deny a postconviction motion where the record establishes that the defendant is not entitled to relief).

 2. Defendantâs Statements

 Â¶52Â Â Â Â Â Â Â Â  A police officer testified during the second trial that

 
 paramedics drew and tested defendantâs blood for alcohol after officers had arrested him;

 
 the paramedics discussed football and the September 11th terrorist attacks with defendant during the hour-and-a-half that it took to draw his blood;

 
 Â defendant said that he had found out about the September 11th attacks while he was on the telephone with a person in Chicago trying to cash a $400,000 bond; and

 
 defendant had âjumped inâ or âinterject[ed] himself in the conversationâ with the paramedics.



 Â¶53Â Â Â Â Â Â Â Â  Defendant contends that his trial counsel was ineffective because counsel did not object to these statements. He asserts that (1) the court should not have admitted these statements because the officer obtained them in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966); and (2) he was prejudiced because the prosecution used these statements â particularly the statement that he was trying to cash a $400,000 bond â to infer that he was conscious of his guilt because he was preparing to flee. We are not persuaded.

 Â¶54Â Â Â Â Â Â Â Â  âWhen a defendantâs principal allegation of ineffectiveness concerns counselâs failure to litigate a suppression claim, the defendant must prove that the suppression claim was meritorious . . . .â People v. Vicente-Sontay, 2014 COA 175, Â¶23 (internal quotation marks omitted); see also, State v. Steward, 340 P.3d 802, 808 (Utah Ct. App. 2014)(âBefore we reach [d]efendantâsÂ ineffective-assistance claim, we must first decide whether [d]efendantâs Miranda rights were actually violated, because [i]f they were not, trial counselâs tardiness in bringing the suppression motion was not prejudicial and the ineffective assistance claim fails.â (internal quotation marks omitted)).

 a. Miranda

 Â¶55Â Â Â Â Â Â Â Â  âTo protect a suspectâs Fifth Amendment right against self-incrimination, Miranda prohibits the prosecution from introducing in its case-in-chief any statement, whether inculpatory or exculpatory, procured by custodial interrogation, unless the police precede their interrogation with certain warnings.â Effland v. People, 240 P.3d 868, 873 (Colo. 2010).

 Â¶56Â Â Â Â Â Â Â Â  But Miranda protections apply only when suspects are in custody and subject to interrogation. Id. An âinterrogation includes express questioning as well as its functional equivalent, that is, any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.â People v. Cisneros, 2014 COA 49, Â¶72 (internal quotation marks omitted).

 b. Analysis

 Â¶57Â Â Â Â Â Â Â Â  Defendant did not set forth facts and allegations in his postconviction motion that, if true, would establish that the police officers were interrogating him when he made the statements. See Osorio, 170 P.3d at 799 (A postconviction court should summarily deny a defendantâs Crim. P. 35(c) motion where âallegations of counselâs deficient performance are merely conclusory, vague, or lacking in detail.â). Instead, he alleged only that he had made the statements after police officers had arrested him and after he had requested an attorney.

 Â¶58Â Â Â Â Â Â Â Â  The testimony of the police officer showed that defendantâs statements were not responses to questions from police officers; defendant instead injected himself into the conversation. In other words, his statements were not the result of âexpress questioning [or] its functional equivalent.â Cisneros, Â¶72.

 Â¶59Â Â Â Â Â Â Â Â  We therefore conclude that (1) the record supports the postconviction courtâs determination that these statements were not the product of police interrogation, see id.; (2) defendant could not prove his claim that trial counsel was ineffective because the record shows that the suppression claim was not meritorious, see Vicente-Sontay, Â¶23; (3) the record also supports the postconviction courtâs determination that defendant did not show how this testimony prejudiced him during the second trial, meaning that defendant did not establish a reasonable probability that the result of the second trial would have been different, see Osorio, 170 P.3d at 799; Karpierz, 165 P.3d at 759; and, therefore, (4) the record supports the postconviction courtâs decision to deny this claim without a hearing, see Osorio, 170 P.3d at 799.

 3. Impeaching the Victim

 Â¶60Â Â Â Â Â Â Â Â  During a search after the second incident, the police found prescription drugs at the marital home that had been prescribed to someone other than the victim. The victim testified that they belonged to a person who had recently died. She said that she had offered to turn them in to a drug bank in Florida.

 Â¶61Â Â Â Â Â Â Â Â  Defendant contends that his trial counsel was ineffective because he did not impeach the victim with evidence that showed that she had lied about how she had come to possess the prescription drugs. He asserts that the lack of this impeachment prejudiced him because the victim âwas the prosecutionâs keyÂ witness and her credibility was not attacked . . . during [counselâs] closing argument.â We disagree for the following two reasons.

 Â¶62Â Â Â Â Â Â Â Â  First, trial counsel tried to impeach the victim on this issue, but the trial court sustained the prosecutorâs objection to such impeachment. The court stated that trial counsel had not produced any evidence to show that the victimâs testimony about the prescription drugs was untrue.

 Â¶63Â Â Â Â Â Â Â Â  Second, our review of the record supports the postconviction courtâs determination that this claim was âspeculative and [could not] form the basis for a valid claim of ineffective assistance of counsel.â Defendantâs supplemental Crim. P. 35(c) motion raised this issue, but it did not allege any facts to support defendantâs contention. For example, the motion does not refer to any reason why the victimâs testimony about the prescription drugs was untrue, and it does not name any witness, document, or database that would support such a reason. See Osorio, 170 P.3d at 799 (A court may âdeny relief where the allegations of counselâs deficient performance are merely conclusory, vague, or lacking in detail.â).

 Â¶64Â Â Â Â Â Â Â Â  The record therefore also supports the postconviction courtâs decision to deny this claim without a hearing. See id.

 III. Defendantâs Claim That He Was Incompetent During His First Trial

 Â¶65Â Â Â Â Â Â Â Â  Defendantâs supplemental Crim. P. 35(c) motion alleged that he was incompetent during his first trial. The postconviction court held a preliminary hearing on the motion. During the hearing, the court asked postconviction counsel to describe the evidence that he thought supported defendantâs claim.

 Â¶66Â Â Â Â Â Â Â Â  Counsel replied that he had relied on defendantâs statements that he was severely depressed, that psychiatrists had treated him at the State Hospital, and that someone had placed him on a suicide watch while he was in jail awaiting his trial. But counsel added that defendant had not been examined by a psychological expert. So the court granted counselâs request for a âretroactiveâ competency evaluation, or one that focused on defendantâs mental state during the first trial. And the court set a competency hearing so that the prosecutor and defense counsel could litigate the issue of defendantâs competency in light of the results of the evaluation.

 Â¶67Â Â Â Â Â Â Â Â  A psychiatrist evaluated defendant, and he formed the opinion that defendant had been competent during the first trial. The psychiatristâs report stated that defendant had understood the legalÂ proceedings and that he had been able to consult with his attorney and to assist in his defense. The report summarized the psychiatristâs findings by stating that âthere [was] no evidence to suggest that [defendant] was experiencing any mental health or medical problems of sufficient severity to interfere markedly with his competency-related functional abilities.â

 Â¶68Â Â Â Â Â Â Â Â  Based on the psychiatristâs opinion, the prosecution filed a motion that asked the postconviction court to (1) deny defendantâs claim that he was incompetent at the time of his first trial; and (2) vacate the evidentiary hearing on that contention.

 Â¶69Â Â Â Â Â Â Â Â  Defendantâs counsel responded by filing a motion that asked the court to order another psychiatrist to perform a second retroactive competency evaluation. The motion stated that the psychiatrist had not interviewed members of defendantâs family in the course of the evaluation.

 Â¶70Â Â Â Â Â Â Â Â  The postconviction court granted the prosecutionâs motion, vacated the evidentiary hearing, and denied defendantâs motion for a second competency evaluation.

 Â¶71Â Â Â Â Â Â Â Â  Defendant raises two contentions concerning this order. First, he asserts that the postconviction court abused its discretion whenÂ it denied his request for a second retroactive competency determination. Second, he submits that the postconviction court did not make sufficient findings of fact or conclusions of law to support its determination that he was competent during the first trial. We disagree with both contentions.

 A. Defendantâs Request for a Second Retroactive Competency Determination

 Â¶72Â Â Â Â Â Â Â Â  Because the decision to grant a second retroactive competency evaluation rested within the sound discretion of the postconviction court, we review the courtâs decision to deny defendantâs request for an abuse of discretion. See People v. Wingfield, 2014 COA 173, Â¶27.

 Â¶73Â Â Â Â Â Â Â Â  Defendant concedes that the version of section 16-8-106(1) in effect in 2001 governed his request for a second retroactive competency evaluation. See Ch. 191, sec. 3, Â§ 16-8-106, 1991 Colo. Sess. Laws 1142. Under that statute, a court had discretion to grant a second competency evaluation if the party requesting the second examination established good cause. The standard for good cause is not onerous, but the party requesting the second evaluation must provide some basis âshowing that the firstÂ examination was inadequate or unfair.â People v. Garcia, 87 P.3d 159, 163 (Colo. App. 2003), affâd in part and revâd in part on other grounds, 113 P.3d 775 (Colo. 2005).

 Â¶74Â Â Â Â Â Â Â Â  The postconviction court denied defendantâs motion for a second retroactive competency examination request by writing the word âdeniedâ on it. We conclude that, by doing so, the postconviction court implicitly found that defendant had not established good cause for a second retroactive competency evaluation. See People v. Galloway, 677 P.2d 1380, 1381 (Colo. App. 1983)(âAlthough the trial court did not make specific findings concerning the witnessesâ competency, it implicitly found them competent by denying the defendantâs motion to dismiss at the close of the prosecutionâs evidence.â).

 Â¶75Â Â Â Â Â Â Â Â  We further conclude, for the following four reasons, that the postconviction court did not abuse its discretion when it denied defendantâs request. See Wingfield, Â¶27.

 Â¶76Â Â Â Â Â Â Â Â  First, the postconviction court gave defendant the benefit of the doubt when it ordered the first retroactive competency evaluation. Although postconviction counsel asserted that defendant had been depressed all his life, that he had been placedÂ on suicide watch in the jail, and that he may have been treated at the state hospital, none of those allegations established that defendant had been incompetent during the first trial. See People v. Morino, 743 P.2d 49, 52 (Colo. App. 1987)(concluding that the defendant did not adequately allege that he was incompetent because â[counsel] did not assert that defendant did not understand the nature of the proceedings or that she was unable to cooperate in her own defenseâ); see also Ch. 44, sec. 1, Â§ 39-8-102(1), 1972 Colo. Sess. Laws 225 (A defendant is âincompetent to proceedâ if he âis suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel.â). Indeed, at the preliminary competency hearing, postconviction counsel admitted that he did not have any expert medical evidence to support his claim.

 Â¶77Â Â Â Â Â Â Â Â  Second, the postconviction court nonetheless granted postconviction counselâs request, and it ordered the psychiatrist to perform a retroactive competency evaluation. It also orderedÂ defendant to provide the psychiatrist with all the information that was necessary to perform the evaluation.

 Â¶78Â Â Â Â Â Â Â Â  But, third, this cautious and careful judicial attention to defendantâs claim did not yield anything that supported it: the psychiatrist formed the opinion that defendant had been competent during his first trial. So, at this point, there still was not any evidence that defendant was incompetent. (And we have not found any indication in the record of the first trial that anyone â trial counsel, the prosecutor, the trial court, a witness, a law enforcement officer, a mental health professional, or defendant himself â thought that defendant might have been incompetent.)

 Â¶79Â Â Â Â Â Â Â Â  Fourth, defendant did not supply the postconviction court with information to establish good cause for a second evaluation. Defendant submits that the good cause resided in his allegation that the psychiatrist did not interview his family members. But the motion for the second evaluation did not state that he had informed the psychiatrist that his family members had relevant and important information, even though the court had ordered him to provide such information to the psychiatrist. Perhaps more importantly, the motion for the second evaluation did not allege anyÂ facts that his family members might have provided that would have suggested that he had been incompetent during the first trial. Defendant therefore did not show that the first examination was inadequate or unfair. See Garcia, 87 P.3d at 163.

 Â¶80Â Â Â Â Â Â Â Â  Under these circumstances, we conclude that the record supports the postconviction courtâs decision to deny defendantâs request for a second competency evaluation, which leads us to conclude further that the postconviction court did not abuse its discretion when it denied that request. See Wingfield, Â¶27.

 B. Sufficiency of the Findings of Fact and Conclusions of Law

 Â¶81Â Â Â Â Â Â Â Â  Defendant contends that the postconviction court abused its discretion because it did not make sufficient findings of fact and conclusions of law in support of its decision to deny his Crim. P. 35(c) claim that he was incompetent during his first trial. We disagree.

 Â¶82Â Â Â Â Â Â Â Â  As we stated above, the prosecution submitted a motion that asked the court to find that defendant had been competent during the first trial and to deny defendantâs Crim. P. 35(c) claim that he had been incompetent during the first trial without a hearing. The motion was two-and-a-half pages long and single spaced. The courtÂ granted the motion by writing the word âGrantedâ on the last page and adding its initials and the date.

 Â¶83Â Â Â Â Â Â Â Â  The prosecutionâs motion

 
 summarized defendantâs factual allegations;

 
 quoted the psychiatristâs opinion from his report that defendant had been competent during the first trial;

 
 quoted the statutory definition of the phrase âincompetent to proceedâ;

 
 cited the relevant case law that placed the burden on the defendant to show that he or she was incompetent;

 
 recognized that the question whether the defendant is competent is one of fact; and

 
 accurately pointed out that defendantâs Crim. P. 35(c) motion âat no point expresse[d] any concern about defendantâs ability to understand the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel.â



 Â¶84Â Â Â Â Â Â Â Â  The prosecutionâs motion directly addressed defendantâs claim that he was incompetent during his first trial. It summarized the relevant facts, and it addressed the pertinent law. We concludeÂ that, by granting this motion, the postconviction court implicitly adopted the prosecutionâs arguments, and it therefore found facts and made legal conclusions that sufficiently set forth the basis of its ruling. See People v. Breaman, 939 P.2d 1348, 1352 (Colo. 1997) (postconviction court resolving a Crim. P. 35(c) motion must make findings of fact and conclusions of law that are sufficient to set forth the basis of its ruling); People v. Rodriguez, 209 P.3d 1151, 1157 (Colo. App. 2008)(â[I]n granting the motion, the court implicitly made the requisite determinations.â); People v. Oglethorpe, 87 P.3d 129, 133 (Colo. App. 2003)(â[W]e may assume that the trial court examined the proposed findings and agreed that they correctly stated the facts as the court found them to be; otherwise, the court would not have adopted them.â).

 Â¶85Â Â Â Â Â Â Â Â  (We recognize that it would have been better practice if the trial court had issued express factual findings and legal conclusions. See Foster v. Phillips, 6 P.3d 791, 796 (Colo. App. 1999)(â[W]hile it is the better practice to make express findings, they may be implicit in a courtâs ruling.â). But we are able to determine accurately what the courtâs findings and conclusions were by examining defendantâs motion, the prosecutionâs motion,Â the psychiatristâs report, and the transcripts of the hearings in which this issue was discussed.)

 Â¶86Â Â Â Â Â Â Â Â  We last conclude that these findings and conclusions are sufficient to support the postconviction courtâs decisions to deny, without a hearing, defendantâs Crim. P. 35(c) claim that he was incompetent during his first trial and to vacate the hearing it had previously set to litigate the question of his competency. See Morino, 743 P.2d at 52.

 IV. Conclusion

 Â¶87Â Â Â Â Â Â Â Â  The appeal of defendantâs contention that his trial counsel was ineffective because he did not test the blood on defendantâs clothes for purposes of the first trial is dismissed as moot. The postconviction courtâs order is otherwise affirmed.

 JUDGE J. JONES and JUDGE HARRIS concur.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back