24CA1690 Peo v Garrett 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1690
El Paso County District Court No. 22CR5846
Honorable David A. Gilbert, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marisa Gail Garrett,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Philip J. Weiser, Attorney General, John T. Lee, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

The Law Office of Sean C. Thomson, LLC, Sean C. Thomson, Denver, Colorado, for Defendant-Appellant

¶ 1     This opinion addresses a challenge to sentences imposed in two separate cases brought against defendant, Marisa Gail Garrett. In accordance with a plea agreement with the prosecution, Garrett pleaded guilty to child abuse resulting in serious bodily injury in a 2022 case and second degree burglary in a 2023 case. After various post-plea proceedings that we describe in detail below, the district court sentenced Garrett in both cases to concurrent terms of eight years in the custody of the Department of Corrections. In this appeal, Garrett contends that the district court misapplied the law and abused its discretion in imposing both sentences. We affirm.

## I.     Introduction

¶ 2     At the heart of this appeal is a statute that went into effect after Garrett pleaded guilty but before the district court revoked her probation and resentenced her to the Department of Corrections. The statute creates "a rebuttable presumption against detention and incarceration of a pregnant or postpartum defendant." § 18-1.3-103.7(3)(a), C.R.S. 2025. Garrett was pregnant on the statute's effective date and, for the remaining time relevant to this appeal, she was either pregnant or postpartum under the statute, which

defines the postpartum period as "a period of one year after the end of a pregnancy, regardless of whether the pregnancy ends with a live birth." § 18-1.3-103.7(2)(b). On appeal, Garrett argues that the district court misunderstood or misapplied section 18-1.3-103.7 when resentencing her to the Department of Corrections.

## II. Background

¶ 3 In November 2022, Garrett was charged with child abuse resulting in serious bodily injury after officers responded to a report that Garrett's two-month-old infant had been dropped. They found the infant to be "emaciated, pale in color with poor skin turgor." An examination at the hospital revealed that the infant weighed only four pounds and had diagnoses of bradycardia, hypothermia, COVID-19, and "severe, egregious malnutrition that [was] near fatal and chronic." The infant also tested positive for amphetamines.

¶ 4 In May 2023, Garrett pleaded guilty to the child abuse charge. At the providency hearing, the prosecution stated its "biggest concern" was drug use and requested the court impose random weekly urinalysis (UA) testing as an additional bond condition. The court agreed.

¶ 5     In a separate case filed in May 2023, Garrett was charged with second degree burglary and aggravated motor vehicle theft based on allegations that she had altered GPS monitoring equipment on a rental van and used the van to commit storage unit burglaries. Garrett later pleaded guilty to second degree burglary, and as part of the plea agreement, the court dismissed the aggravated motor vehicle theft charge.

¶ 6     In July 2023, the court held a sentencing hearing on the child abuse conviction. The prosecutor informed the court that when the abuse occurred, Garrett had been on probation for previous offenses: possession of a controlled substance and five counts of child abuse. These offenses arose while Garrett was living with her significant other, who was on parole. When parole officers conducted a home check, they found five children aged two to twelve inside, with cat feces and trash "all over," no food for the children (who had also not been bathed), and drugs and drug paraphernalia in the bathroom. According to the prosecutor, this incident was part of an "extensive record from [the Department of Human Services (DHS)]" dating back to 2016 that included concerns "ranging from educational neglect, dirty home, injurious

3

environment, and medical neglect." The prosecutor argued that Garrett had a pattern of not cooperating with and lying to medical personnel and DHS, and that she struggled with drug addiction.

¶ 7 At the July 2023 sentencing hearing, the prosecutor also informed the court that, while on bond for the child abuse charge, Garrett not only had failed to complete her UA tests as required but also had been charged in the second degree burglary case. The prosecutor cited evidence that Garrett "appeared to struggle with the gravity of the situation," "withheld information . . . which was a pattern," and "can influence certain people."

¶ 8 For the child abuse offense, the court sentenced Garrett to supervised probation for three years, conditioned on a sentence of ninety days in the El Paso County Jail and full compliance with the requirements of her dependency and neglect case. The court ordered Garrett to report to jail on July 25, 2023; however, Garrett failed to do so because of complications with a pregnancy.

¶ 9 On August 1, 2023, Garrett's counsel provided the court with medical records showing she was in the emergency room on July 25 and July 27 related to the pregnancy. Garrett's counsel also informed the court that section 18-1.3-103.7 had gone into effect

that morning. Based on the newly enacted statute, Garrett's counsel requested the court not take Garrett into custody to serve the jail component of her sentence. The court granted the request and declined to execute the jail portion of the sentence at that time. Garrett gave birth on or around August 20, 2023.

¶ 10 In September 2023, the court sentenced Garrett for the burglary conviction, ordering her to serve a term of supervised probation concurrent with the probation sentence that it had previously imposed in the child abuse case. Because Garrett was in the postpartum period as defined by section 18-1.3-103.7(2)(a), her counsel requested that the court once again stay the jail condition of her child abuse sentence. The court agreed and ordered Garrett to turn herself in to jail by August 20, 2024, the date the postpartum period ended.

¶ 11 At the end of March 2024, the probation department filed a complaint alleging that Garrett had violated the terms and conditions of her probation by failing to comply with drug testing. On April 16, 2024, Garrett appeared before the court and was advised of the revocation complaint. Because the public defender was unable to represent her due to a conflict, the court continued

5

the matter for a week to allow for the appointment of alternate defense counsel. Even though she was still in the postpartum period, Garrett was then taken into custody at the El Paso County Jail.

¶ 12 At the continued hearing on April 23, 2024, Garrett's attorney announced that Garrett was pregnant and argued that she should be released back to probation. The prosecutor was skeptical, explaining that she had "concerns about believing the veracity of [Garrett's] statements" given Garrett's history of misleading police and medical personnel. The court assumed that Garrett was in fact pregnant and, referencing the statute, noted that the statutory presumption against incarcerating her would apply. The court went on to find, however, that the statutory presumption was rebutted by the "extraordinary circumstances" of Garrett's case. Specifically, the court concluded, Garrett's "behavior, history, background, demonstrate[] that not considering incarceration . . . could be of serious harm to mother, child, or both." As a result, the court was "not satisfied that there's good cause to follow the instruction that [it] should take all reasonable efforts to avoid [Garrett's]

6

incarceration." The court declined to release Garrett and continued the probation revocation hearing to May 14, 2024.

¶ 13 At the continued probation revocation hearing in May 2024, Garrett admitted she had failed to comply with drug testing and the parties confirmed that Garrett was in fact pregnant. Defense counsel again argued that the statutory presumption against incarceration should apply. The court requested briefing, and after considering the parties' arguments, it released Garrett on bond with the condition of home detention.

¶ 14 In July 2024, Garrett's cases were set for resentencing. At the hearing, Garrett's counsel requested a continuance and the court granted the request. Then, Garrett's counsel again argued the court should apply the presumption against incarceration when reconsidering bond because Garrett was in her postpartum period.[1] The prosecutor objected and informed the court that when Garrett was released on bond in May 2024, two of her older children had run away from their foster home and had been publicly reported as missing, and that Garrett had housed them without notifying

---

[1] It appears that as of June 2024 Garrett was no longer pregnant.

anyone. The prosecutor argued that this showed Garrett was not only a danger to the community, but also a danger to her own children, even though the children were not in her custody. The prosecutor maintained that the rebuttable presumption against incarceration was overcome because, while on probation, Garrett had harbored her children, missed more required UAs, and continued to "manipulate the system." The court agreed and denied bond.

¶ 15    In August 2024, the court held the continued resentencing hearing. A probation officer testified that the department "was leaning towards requesting a revoke and regrant" but "probation's biggest hold up" was that "when the stakes were seemingly the highest," Garrett "again missed the drug test." As a result, the department was "now hesitant to recommend a sentence back to probation" and instead recommended a sentence to community corrections.

¶ 16    Reiterating concerns raised in previous hearings — including the egregious nature of Garrett's child abuse offense and her noncompliance with the terms and conditions of both bond and probation — the prosecutor urged the court to resentence Garrett to

the Department of Corrections. The prosecutor also provided several examples of Garrett lying or otherwise manipulating the medical system, court system, and social services.

¶ 17    In explaining its sentence, the court described the case as "an extremely difficult situation from the beginning"; Garrett had been "dealing with a drug addiction," "making up lots of stories about her good care of [her] child," "being uncooperative with DHS," and "trying to come up with some manipulative behavior to try to avoid the fact that she wasn't following the [UA testing] requirements." The court also discussed the details of the child abuse offense, stating the infant "was tortured" by Garrett. The court concluded:

> Ms. Garrett had a tremendous opportunity here to demonstrate that she could be properly supervised in the community, that she could be compliant in the community.
>
> But there is consistency in her lies and manipulation to escape punishment. Even after I sentenced her to a small amount of incarceration as a condition previously of the probation violation, she manipulated and contrived to get out of that punishment. At times during the processing of this case, she was pregnant and then she wasn't pregnant and then she was pregnant again in custody. And the lies and manipulations in the Court's opinion continued up until this very day.

And so I am very sorry. I apologize to the community that I didn't recognize sooner that community placement for Ms. Garrett was the real cruelty. And that should never have occurred because she does manipulate, she lies, she is not trustworthy. And her intentions are not good in terms of trying to make up for and become better at having empathy, having sympathy, having concern for other human beings, even her own baby. And so I'm very sorry that it took me so long to come to my senses.

¶ 18 The court resentenced Garrett to eight years in the custody of the Department of Corrections for the child abuse offense and eight years in the custody of the Department of Corrections for the second degree burglary offense, setting both sentences to run concurrently.

### III.   Discussion

¶ 19 Garrett contends that the district court abused its discretion by repeatedly misunderstanding or misapplying the requirements of section 18-1.3-103.7(3)(a). Specifically, she argues that the court erroneously (1) incarcerated her to enforce her sobriety during her pregnancy in April 2024; (2) concluded that section 18-1.3-103.7 did not apply to its decision on bond in July 2024; and (3) sentenced her more harshly in August 2024 because she had used

10

her pregnancy and postpartum status to "get out of punishment." We conclude that her first two arguments related to the court's April and July 2024 decisions are moot. We also conclude that the court did not abuse its discretion in resentencing Garrett in August 2024 after finding the presumption against incarcerating a pregnant or postpartum defendant was overcome.

## A. Mootness

¶ 20 At the threshold, we consider whether any challenges related to the district court's custodial decisions before the August 2024 resentencing hearing are moot because Garrett is no longer confined as a result of those decisions. We conclude that they are.

¶ 21 "[M]ootness is a threshold question concerning the scope of our jurisdiction" that we must answer before analyzing the merits. *People v. Chipman*, 2015 COA 142, ¶ 38. We review de novo whether an issue on appeal is moot. *People v. Garcia*, 2014 COA 85, ¶ 8. An issue is moot when the relief sought, if granted, would have no practical effect on an actual and existing controversy. *See People v. Valdez*, 2017 COA 41, ¶ 54.

¶ 22 In her appellate briefing, Garrett challenges custodial decisions made by the district court in April 2024 and July 2024.

11

But Garrett is no longer confined as a result of either of those decisions; rather, she is serving a prison sentence following her probation revocation and resentencing. As a result, there is no existing controversy regarding the April 2024 and July 2024 decisions, and an opinion from this court would have no practical legal effect. *See People v. Reeves*, 252 P.3d 1137, 1142 (Colo. App. 2010) (finding the appeal of a sentencing issue moot, as the sentence had been served and no meaningful relief would be available). Accordingly, the arguments are moot and the only issue before this court is whether the district court abused its discretion in its August 2024 resentencing decision.[2]

### B.    August 2024 Resentencing

¶ 23    Garrett contends that the district court abused its discretion because, as a result of a misunderstanding or misapplication of section 18-1.3-103.7, it sentenced her to two concurrent eight-year terms of incarceration while she was postpartum. We are not persuaded.

---

[2] Garrett does not argue that any of the exceptions to the mootness doctrine should apply.

## 1. Standard of Review and Applicable Law

¶ 24 We review the district court's sentencing decisions for an abuse of discretion. *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990). "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it fails to exercise its discretion due to its erroneous construction of the law." *People v. Herrera*, 2014 COA 20, ¶ 16 (citation omitted). Because the district court is more familiar with the defendant and the circumstances of the case, we accord wide latitude to its sentencing decisions. *People v. Eurioste*, 12 P.3d 847, 850 (Colo. App. 2000).

¶ 25 When sentencing a criminal defendant, the district court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence. *Id.* And, for a defendant who is pregnant or postpartum, the court must also apply a rebuttable presumption against detention and incarceration. § 18-1.3-103.7(3)(a). The presumption against incarceration is rebutted, however, if the court "make[s] specific findings on the record that the risk to public safety or any other

factor the court is required to consider is substantial enough to outweigh the risk of incarceration." *Id.*

¶ 26 A court "need not engage in a point-by-point discussion of every factor relevant to its sentencing decision." *People v. Martinez,* 179 P.3d 23, 26 (Colo. App. 2007). A reasonable explanation on the record is sufficient. *Id.* "If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case," we will uphold it. *Fuller,* 791 P.2d at 708.

## 2. Analysis

¶ 27 We conclude the district court did not abuse its discretion by resentencing Garrett to the Department of Corrections because it concluded that the presumption against incarcerating a postpartum person was overcome.

¶ 28 First, we reject Garrett's contention that the district court misunderstood or refused to apply section 18-1.3-103.7. The court repeatedly considered Garrett's pregnancy and postpartum status under the statutory framework and applied the presumption against incarceration. Indeed, the court declined to execute the jail portion of Garrett's sentence for the child abuse offense in August

2023 and September 2023, and it released Garrett on bond in May 2024.  In each of these instances, the district court explained that it was doing so as a result of the statutory presumption.

¶ 29    Second, we conclude the district court considered appropriate sentencing factors and relied on permissible reasons supported by the record in its August 2024 resentencing decision.  The court considered the circumstances surrounding the offenses; the fact that Garrett had been given "a tremendous opportunity" to demonstrate she could be properly supervised and compliant in the community and failed to do so; and how Garrett "manipulate[d]," "lie[d]," and was "not trustworthy."  The record provides ample support for these considerations.  Accordingly, the presumption against incarceration was overcome because the district court found that "the risk to public safety" and other "factor[s] the court is required to consider" were "substantial enough to outweigh the risk of incarceration."  § 18-1.3-103.7(3)(a).

¶ 30    Garrett maintains that the court flipped the statutory presumption on its head and sentenced her *more* harshly than it would have otherwise done because she had used her pregnant and postpartum status "to get out of punishment."  In support of this

contention, she asserts that, by referencing her "lies and manipulation to escape punishment," the court was suggesting that Garrett had used her pregnant and postpartum status as a means of avoiding incarceration. We do not agree with Garrett's interpretation of the court's statement; indeed, there is record support for the conclusion that Garrett repeatedly misled law enforcement, probation officers, and medical personnel and tried to manipulate various systems to avoid completing UAs and complying with other pretrial and probation requirements. Reviewing the district court's discussion in context, it is likely the court was referring to these instances rather than characterizing Garrett's pregnant and postpartum status itself as "manipulation."

¶ 31    Finally, Garrett argues that the court abused its discretion by sentencing her to an eight-year term because she was treated more harshly than her co-defendant, who received a two-year prison sentence for the same offense. That is not a relevant consideration under the circumstances of this case. *See People v. Hayes*, 923 P.2d 221, 230 (Colo. App. 1995) ("[S]entencing is individualized, and there is no rule that co-defendants must receive equal sentences.").

16

## IV.    Disposition

¶ 32    The sentences are affirmed.

JUDGE GOMEZ and JUDGE MOULTRIE concur.